UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN DIANI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-01480-SRC |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## Memorandum and Order

Stephen Diani asks the Court to set aside, correct, or vacate his sentence under 28 U.S.C. § 2255. He makes four arguments: that he suffered from ineffective assistance of counsel during plea negotiations, that the United States charged him under an unconstitutional statute, that the statute under which he was convicted is unconstitutional, and that the Court erroneously applied the sentencing guidelines. Having carefully reviewed the record, the Court holds that Diani has not demonstrated entitlement to relief or an evidentiary hearing under section 2255. The Court accordingly denies his motion.

**I.     Background**

    **A.     Factual background**

Diani's guilty-plea agreement describes the following facts:

    **Count One – First Arrest**

On September 8, 2021, officers of the St. Louis County Police Department approached Diani's maroon Grand Marquis outside a convenience store. Police were investigating it as a potentially stolen vehicle because the license plate was not registered to the vehicle. As officers spoke with Diani, they observed a crack pipe with burnt residue near the radio on the dashboard.

    Officers asked Diani to step out of the vehicle so they could further their investigation. Because the license plate was not registered to the vehicle, officers

inspected the vehicle to read its VIN to determine if it was stolen. The VIN at the windshield was obscured, so officers opened the driver door to record the VIN from the frame of the door. When the door was opened, they observed a firearm sitting on the side of the driver's seat, between the seat and the door. Officers seized the firearm and identified it as a Smith and Wesson make, SD9 VE model, 9 mm caliber semiautomatic handgun. It was loaded with one round in the chamber and eight rounds in its magazine.

Police subsequently searched the vehicle. On the front passenger seat, police found a plastic bag containing three bags of off-white substances and a bag containing a gray rock-like substance. The off-white substances were determined to total 3.613 grams cocaine base. The gray substance was determined to be 0.548 grams heroin. The vehicle was filled with power tools and equipment, including a generator, weedwhacker, concrete saw, angle grinder, and leaf blower. In addition to the power tools, there were countless hand tools in the vehicle.

Diani was arrested, booked, and later released.

**Count Two – Second Arrest**

On September 23, 2021, Diani was arrested after police responded to calls that he was tampering with cars by walking through a neighborhood checking door handles. When police arrived on scene, they found Diani inside a red SUV that belonged to one of the residents of the neighborhood. Diani immediately began running away from officers. They pursued him and arrested him. In a subsequent search of Diani, police located the car keys to his maroon Grand Marquis.

Police then found Diani's Grand Marquis parked near the home of the original complainant and conducted an inventory search of the vehicle in preparation for towing it. On the front passenger seat, police located an Essential Arms make, J-15-F model, .223 caliber semiautomatic rifle. It was loaded with one magazine containing eight rounds of ammunition. Next to it, there was a spare magazine for the rifle containing 26 rounds of ammunition. There were also 2 rounds of loose 9 mm ammunition on the seat.

Also in the Grand Marquis, police found bolt cutters, three leaf blowers, an edge trimmer, a Sawzall, an angle grinder, a laser-level system, medical kits, and miscellaneous tool bags containing hand tools. A resident of the neighborhood where Diani was arrested reported that the laser-level system, edge trimmer, Sawzall, hand tools, medical kits, and two of the three leaf blowers had been stolen from his truck that evening. The remaining items were not claimed.

Diani was arrested and booked, but was released from custody and admitted to a nearby hospital because he had an active infection from an animal bite to his hand.

**Count Three – Third Arrest**

In December 2021 and January 2022, Shrewsbury Police Department officers began working with St. Louis Metropolitan Police Department ("SLMPD") detectives who were investigating a rash of burglaries that had occurred in St. Louis near its border with Shrewsbury. Shrewsbury police had been monitoring Diani's use of a storage locker in their city, and reporting to the SLMPD tools and equipment they observed him loading into the storage locker.

During their investigation, Shrewsbury Detective Ryan Thieret received a call from an anonymous caller who reported that Diani had indicated he believed that Shrewsbury police had been watching him in relation to items he had been stealing. The anonymous tipster reported that Diani stated, "I'm not going to jail. I have an AK-47, and I will kill them if I have to. I'll die before I go back to jail."

On January 11, 2022, Shrewsbury police received information that the SLMPD detective's investigation had progressed to the point where a "wanted" bulletin had been issued for the arrest of Diani. On January 12, 2022, a Shrewsbury officer observed Diani's vehicle parked at his storage locker. Aware of the threat to officers, the officer called for additional units to respond before approaching Diani. As police approached the storage locker, the overhead door was open to about the officers' mid-thigh. In response to officers calling out his name, and after a 26-second delay, Diani came to the door and opened it. Police instructed Diani to put his hands in the air. Diani initially complied, opened the door to head-height, and raised his hands. Officer Lawson could see another individual in Diani's storage locker. Then, Diani used his raised hands to grab the overhead door and pull it closed. Officer Lawson lunged for the door to keep it open, and after a brief struggle, Officer Lawson was able to open it. As Officer Lawson opened the door, Diani retreated farther into the storage locker.

After Police opened the door, a 38-minute standoff began as Diani refused officer commands to exit the storage locker. During the standoff, a handgun sat in plain view on the roof of a golf cart parked near the entrance of the storage locker. While Diani never picked up the firearm from the golf cart roof, he repeatedly moved towards the firearm and placed his hand on the firearm handle if he felt police officers were coming too close to him. At other times he moved objects around inside the storage locker to construct a make-shift barricade between him and the officers.

During the standoff, Diani repeatedly made suicidal statements, stating to police, "Just kill me." When officers repeatedly responded that nobody wanted him to die, he answered, "I do." Also during the standoff, he asked officers to call his mom so that he could say goodbye. Officers interpreted this behavior by Diani as a precursor to a potential suicide-by-cop situation in which Diani may grab the firearm and shoot at officers to cause police to shoot and kill him.

3

Officers defused the situation by two officers approaching Diani after holstering their firearms and negotiating for Diani to release the bystander, who remained sheltered in place at the rear of the storage locker throughout the standoff. As Diani made room to allow the bystander to pass, officers jumped over Diani's makeshift barricade and tackled him. Even once tackled, Diani continued resisting officers' attempts to secure Diani and place him under arrest. At least one officer injured himself when he jumped over the barricade and landed amongst the numerous stolen tools and equipment within the storage locker. Diani's firearm was seized and identified as a Taurus make, PT-111 model, 9 mm semiautomatic handgun. It was loaded with one round of ammunition chambered and 8 additional rounds of ammunition loaded in its magazine.

Police determined that the bystander was present after he responded to an internet ad from Diani to purchase tools. SLMPD detectives responded and saw in plain view numerous stolen items that they recognized from recent residential burglaries in St. Louis City.

**Facts Relevant to Multiple Counts**

The Smith & Wesson handgun, the Essential Arms rifle, and the Taurus handgun were determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, the three firearms had been transported across state lines and in interstate commerce prior to or during [Diani]'s possession. Each of the three firearms can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law. [Diani] admits knowingly possessing each of the three firearms in the Eastern District of Missouri at the time of his respective arrests.

Prior to September 8, 2021, [Diani] was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time [Diani] possessed each of the aforementioned firearms, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

Guilty Plea Agreement at 3–7, *United States v. Diani*, No. 4:22-cr-00032-SRC-1 (E.D. Mo. June 15, 2023), doc. 46 ("Crim. doc.") (The Court cites to page numbers as assigned by CM/ECF.).

B.   **Procedural background**

1.   **Criminal proceedings**

In January 2022, the SLMPD filed a criminal complaint against Diani and alleged that he had violated 18 U.S.C. § 922(g)'s prohibition on felons from possessing firearms. Crim. docs. 1–2. The same month, a grand jury charged Diani with three counts of violating section

4

922(g)(1).  Crim. doc. 17.  A year and a half later, in exchange for the United States's promise to move for dismissal of the first count, Diani pleaded guilty to the second and third counts.  Crim. docs. 44, 46.  Diani admitted to knowingly violating section 922(g)(1), admitted that there was a factual basis for the plea, and admitted that he fully understood the elements of his crime, namely:

1. That he "had been convicted of a crime punishable by imprisonment for a term exceeding one year;"

2. That he, "thereafter, knowingly possessed a firearm;"

3. That, "[a]t the time he knowingly possessed a firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and"

4. That "[t]he firearm was transported across a state line at some point during or before [his] possession of it."

Crim. doc. 46 at 2.

Diani also agreed to waive many of his rights.  Diani agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery[,] and the guilty plea."  *Id.* at 11.  He also agreed to waive his right to appeal all sentencing issues, except those related to application of Sentencing Guideline offense-level adjustments not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement, calculation of the criminal-history category, or substantive reasonableness of the sentence if the Court would sentence him above the guideline range.  *Id.*  Diani also "agree[d] to waive all rights to contest the conviction or sentence

in any post-conviction proceeding, including one pursuant to . . . [s]ection 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.*

The United States Probation Officer prepared a Presentence Investigation Report. Crim. doc. 55. The PSR calculated Diani's total offense level as 29 and his criminal-history category as VI. *Id.* at ¶¶ 37, 58. Based upon that total offense level and criminal-history categorization, the imprisonment range under the Sentencing Guidelines was 151 to 188 months. *Id.* at ¶ 93.

In June 2023, the Court held a plea hearing at which Diani pleaded guilty to counts two and three. Crim. doc. 44. And six months later, the Court sentenced Diani to a within-the-guidelines-range sentence of 165 months. Crim. docs. 61–62. Diani is currently serving his sentence at Beckley FCI in West Virginia with a projected release date of October 27, 2033. *See* Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 21, 2025).

### 2. Civil proceedings

In November 2024, Diani timely filed a motion to vacate his sentence pursuant to section 2255. Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, No. 4:24-cv-01480-SRC, *Diani v. United States* (E.D. Mo. Nov. 4, 2024), doc. 1 ("Civ. doc."). He makes four arguments: that he suffered from ineffective assistance of counsel during plea negotiations, that the United States charged him under an unconstitutional statute, that the statute under which he was convicted is unconstitutional, and that the Court erroneously applied the sentencing guidelines to his case. *See id.* The United States timely filed its response, civ. doc. 3, and Diani failed to file a reply brief by the deadline, *see* civ. doc. 2, rendering Diani's motion, civ. doc. 1, ripe for the Court's review.

## II. Standard

### A. Section 2255

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments). Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal. *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018). If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief. *See id.*

Three exceptions to this general rule exist. First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002). Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice. *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims

7

that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)). Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

**B.     Ineffective assistance of counsel**

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being

8

forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.*  Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001).  A movant "faces a heavy burden" to establish ineffective assistance of counsel under section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *Sera*, 267 F.3d at 874.  Two substantial impediments exist to making such a showing.  First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689).  Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

### III. Discussion

#### A. Ineffective assistance of counsel

First, Diani argues that he suffered from ineffective assistance of counsel because his counsel did not inform him that he could challenge section 922(g)(1) as unconstitutional.  Civ. doc. 1 at 5.  Diani contends that his counsel's failure to inform him of this potential challenge

induced Diani to plead guilty. *Id.* Along these lines, Diani spends the bulk of his motion arguing that section 922(g)(1) is unconstitutional as applied to him. *See* civ. doc. 1-1.

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy *Strickland*'s prejudice element in the context of plea negotiations, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59 (citation omitted).

Here, even if Diani's counsel performed deficiently by failing to inform Diani of the potential to challenge section 922(g)(1) on constitutional grounds, Diani cannot demonstrate prejudice because it is not "likely" that the unconstitutionality affirmative defense "would have succeeded" had Diani pursued it. *Id.* In *United States v. Jackson*, the Eighth Circuit rejected an as-applied challenge to section 922(g)(1) and let on that it would not entertain as-applied challenges in the future. 110 F.4th 1120, 1129 (8th Cir. 2024); *see id.* at 1125 ("[T]here is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."); *id.* at 1126 (explaining that section 922(g)(1) passes constitutional muster "as applied to Jackson and other convicted felons"); *id.* at 1127 ("[H]istory supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society." (citations omitted)); *id.* at 1129 ("Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."). Since *Jackson*, the Eighth

10

Circuit has kept its word and rejected every constitutional challenge to section 922(g)(1) that it has seen. *See, e.g.*, *United States v. Cunningham*, 114 F.4th 671, 675 (8th Cir. 2024) (holding that Eighth Circuit precedent "foreclosed" an as-applied challenge to section 922(g)(1)); *United States v. Mull*, 113 F.4th 864, 869 (8th Cir. 2024) (same); *United States v. Lowry*, 112 F.4th 629, 632 (8th Cir. 2024) (same); *United States v. Ware*, No. 24-2020, 2025 WL 1790267, at *2 (8th Cir. June 30, 2025) (same). Thus, the Court rejects Diani's ineffective-assistance-of-counsel argument. *See Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (holding that a court "need not 'address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one'" (quoting *Strickland*, 466 U.S. at 697)).

    **B.**    **Charging under unconstitutional statute**

The Court cannot clearly discern the basis for Diani's second ground for relief. *See* civ. doc. 1 at 6–7. Diani labels the ground "sentencing inhancments [sic] of unconstitutional nature," but in describing the supporting facts, Diani complains that he was "charged for 'reaching or moving' where a firearm was present." *Id.* at 6. For two reasons, the Court construes this ground as a constitutional challenge to section 922(g)(1) and not as an attack on any of the guideline enhancements. First, the *specific* grievance complains about what Diani was "charged" with, not about anything peculiar to the sentencing. *See Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (holding that "if the essence of an allegation" from a self-represented litigant "is discernible," the Court "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework" (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Second, Diani fails to identify any sentencing enhancement that he takes issue with, nor does he identify any ground on which any of the enhancements might be unconstitutional. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[I]n both civil

11

and criminal cases, in the first instance and on appeal, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present" (citation modified) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))).

As discussed above, Eighth Circuit precedent rejects Diani's argument that he was charged under an unconstitutional statute. Thus, the Court rejects Diani's second ground for relief.

### C. Unconstitutional statute of conviction

In his third ground, Diani argues that the statute under which he was convicted is unconstitutional as applied to him. Civ. doc. 1 at 8. As discussed above, Eighth Circuit precedent rejects this argument. This Court does, too.

### D. Application of sentencing guidelines

Finally, Diani argues that the district court erred when it added two points to his base offense level for an offense involving three to seven firearms. *Id.* at 9; *see also* crim. doc. 55. This claim isn't cognizable under section 2255, so the Court rejects the claim.

"Section 2255 'was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)). "Like habeas corpus, this remedy 'does not encompass all claimed errors in conviction and sentencing.'" *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). "It provides a remedy for jurisdictional and constitutional errors[] . . . ." *Id.* "Beyond that, the permissible scope of a [section] 2255 collateral attack on a final conviction or sentence is severely limited; 'an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect

12

which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Addonizio*, 442 U.S. at 185).

Here, no miscarriage of justice exists because "the same [165]-month sentence could be reimposed were [Diani] granted the [section] 2255 relief he requests." *Id.* at 705.  Indeed, the Court sentenced Diani to 65 months on count 2 and 120 months on count 3, crim. doc. 62 at 2, both within the 120-month statutory maximum for the applicable count, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2).  That renders Diani's sentence lawful and his section 2255 claim non-cognizable.  *See Sun Bear*, 644 F.3d at 705.

## IV. Certificate of appealability

For the Court to issue a certificate of appealability, Diani must make a substantial showing that he suffered the denial of a constitutional right.  *See Cox v. Norris*, 133 F.3d 656, 569 (8th Cir. 1997).  A substantial showing means one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings.  *Id.*  But as shown in the discussion above, Diani has not made such a showing.  Accordingly, the Court declines to issue a certificate of appealability in this case.

## V. Conclusion

The Court finds that the record conclusively establishes that section 2255 does not entitle Diani to relief or an evidentiary hearing.  Accordingly, the Court denies Diani's [1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  A separate judgment accompanies this Memorandum and Order.

So ordered this 21st day of July 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE